```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                         :
LORI KALIE et al.,                                       :
                                                         :
                              Plaintiffs,                :
                                                         :          12 Civ. 9192 (PAE)
                  -v-                                    :
                                                         :          OPINION & ORDER
BANK OF AMERICA CORPORATION et al.,                      :
                                                         :
                              Defendants.                :
                                                         :
------------------------------------------------------------------------X
```

PAUL A. ENGELMAYER, District Judge:

In this case, 52 individual plaintiffs from 16 different states sue a combined 16 defendant banks and loan servicers, each based on a discrete mortgage transaction. Plaintiffs assert 11 causes of action: under (1) the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*; (2) the Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639; (3) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*; (4) the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*; (5) New York General Business Law section 349, which prohibits deceptive practices; and for (6) common law fraud; (7) unjust enrichment; (8) breach of the covenant of good faith and fair dealing; (9) breach of contract; (10) common law negligence; and (11) injunctive and declaratory relief. Plaintiffs seek rescission or reformation of the loans, compensatory damages, punitive damages, injunctive relief, a declaratory judgment, and attorneys' fees and costs.

Defendants Bank of America Corporation and Bank of America, N.A. (collectively, "Bank of America") and defendant Seterus Inc. ("Seterus," together with Bank of America, "defendants") move to (1) sever, and dismiss the claims of, all plaintiffs, except for Lori Kalie, the first-named plaintiff, as misjoined; and (2) transfer Kalie's claims to the Eastern District of

Pennsylvania; or alternatively (3) dismiss all of plaintiffs' claims in their entirety as against all defendants. Seterus also seeks costs for this motion.

For the reasons that follow, the Court grants defendants' motion to sever, and on that ground, dismisses without prejudice the claims of all plaintiffs except the first-named plaintiff, Lori Kalie. With regard to Kalie's claims, the Court grants defendants' motion to dismiss for failure to state a claim, but does so without prejudice to Kalie's right to file an amended complaint.

## I. Background[1]

### A. Facts

Plaintiffs are residential homeowners throughout the country. Am. Compl. ¶ 2. Plaintiffs allege "a pattern of misdealing, deceit, and fraud" in the "servicing, modification, securitization, and foreclosure activity for the Plaintiffs' loans." *Id.* ¶¶ 14–15.

The Amended Complaint alleges 26 types of wrongful conduct by defendants, including (but not limited to) issuing loans based on stated income, inflated property values, and/or without the necessary underwriting; failing to respond to borrower complaints or inquiries; wrongfully

---

[1] For the purpose of resolving the motion to dismiss, the Court assumes all facts pled in plaintiffs' Amended Complaint ("Am. Compl.") (Dkt. 13) to be true, drawing all reasonable inferences in favor of plaintiffs. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

The following abbreviations are used herein for the parties' memoranda of law:  (1) Memorandum of Law of Defendants Bank of America Corporation and Bank of America, N.A. in Support of Their Motion to Sever, Transfer, and/or Dismiss Plaintiffs' First Amended Complaint ("BoA Br.") (Dkt. 16); (2) Memorandum of Law in Support of Motion to Sever and/or Dismiss the Amended Complaint by Defendant Seterus ("Seterus Br.") (Dkt. 18); (3) Memorandum of Law in Support of Plaintiffs' Opposition to Defendants' [] Motion to Sever, Transfer, and/or Dismiss Plaintiffs' First Amended Complaint ("Pl. Br.") (Dkt. 26); (4) Reply Memorandum of Law in Further Support of Motion to Sever and/or Dismiss the Amended Complaint by Defendant Seterus Inc. ("Seterus Reply Br.") (Dkt. 27); and (5) Reply of Defendants Bank of America Corporation and Bank of American, N.A., in Support of Their Motion to Sever and Dismiss Plaintiffs' First Amended Complaint ("BoA Reply Br.") (Dkt. 28).

2

denying loan modifications and/or miscalculating eligibility for loan modifications; selling negative amortization loans (or loan modifications) designed to leave plaintiffs "underwater"; and/or failing to perform proper loan modification underwriting. *See id.* ¶ 18(a)–(z). Plaintiffs also allege that defendants are "wrongfully claiming to be the real party in interest with respect to the loans at issue, lacks [*sic*] standing to collect the debts, and have no rights whatsoever with respect to the loans." *Id.* ¶ 19. Based on these generalized descriptions of improper practices, the Amended Complaint lists the above causes of action.

The Amended Complaint does not specify which of this alleged misconduct applies to which plaintiff, which defendant, or which loan transaction. Nor does the Amended Complaint in any way differentiate between the 16 defendants, or state which was responsible for which type of wrongdoing. It does not state what the roles were that were played by individual defendants: for example, whether a given entity originated, modified, serviced, or securitized loans in general, let alone loans to the plaintiffs.

The Court regrets that it cannot recite the factual allegations in any more detail. The fault lies with the Amended Complaint: Its allegations do not include a single factual allegation keyed to a particular plaintiff or defendant.

### B.   Procedural History

On December 17, 2012, plaintiffs filed their Complaint. Dkt. 1. On March 11 and March 15, 2013, defendants filed motions to dismiss and sever. Dkt. 2–5 (Bank of America); Dkt. 8–10 (Seterus).

On April 4, 2013, plaintiffs filed their Amended Complaint. Dkt. 13. On April 11 and April 18, 2013, Bank of America and Seterus filed similar motions to dismiss and sever. Dkt. 14–16 (Bank of America); Dkt. 17–19 (Seterus).[2]

On May 9, 2013, plaintiffs filed a brief in opposition. Dkt. 27. In it, plaintiffs purport to voluntarily dismiss, without prejudice, all defendants other than the two Bank of America entities and Seterus. They also state that all but 16 plaintiffs have "voluntarily withdrawn their claims in this matter, without prejudice." Pl. Br. 2. The docket does not reflect the filing of a notice of any such dismissal, as required by Federal Rule of Civil Procedure 41(a)(1). On May 16, 2013, Bank of America and Seterus filed replies. Dkt. 27–28.

## II.     Applicable Legal Standards

### A.     Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus,

---

[2] On April 30, 2013, defendant PNC Bank NA ("PNC") waived service. Dkt. 24. That same day, PNC filed a notice joining Bank of America's motion. Dkt. 25. Because plaintiffs *sua sponte* dismissed all claims against all defendants except Bank of America and Seterus *after* this date, *see infra*, the Court does not address any claims against PNC.

a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In addition to meeting the pleading standards under *Twombly*, a complaint alleging fraud must satisfy Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  For a fraud claim "to comply with Rule 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted). The complaint must also plead facts that give rise to a strong inference of fraudulent intent. *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,* 84 F.3d 629, 634 (2d Cir. 1996).

### III. Discussion

#### A. Misjoinder

##### 1. Standard

Federal Rule of Civil Procedure 20(a) permits the joinder of multiple plaintiffs if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Both of these elements are required for a proper joinder of plaintiffs. *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009); Moore's Federal Practice § 21.02 [1] (3d ed. 2009) ("Failure to satisfy either prerequisite for permissive joinder constitutes misjoinder of parties.").

In addition to these two requirements, courts in this District consider the following additional factors on a motion to sever:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011) (quoting *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 154–55 (S.D.N.Y. 2003) (Pollack, J.)); *accord Crown Cork & Seal Co., Inc. Master Ret. Trust v. Credit Suisse First Boston Corp.*, 288 F.R.D. 331, 332–33 (S.D.N.Y. 2013).

"If a court concludes that defendants have been improperly joined under Rule 20, it has broad discretion under Rule 21 to sever parties or claims from the action." *Deskovic*, 673 F. Supp. 2d at 159–60. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."); *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988) ("The decision whether to grant a severance motion is committed to the sound discretion of the trial court.").

Although "[t]he requirements of Fed. R. Civ. P. 20(a) are to be interpreted liberally 'to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding,'" *Viada v. Osaka Health Spa, Inc.*, 235 F.R.D. 55, 61 (S.D.N.Y. 2006) (citation omitted), the requirements of the rule still must be met and constrain the Court's discretion.

### 2.   Same Transaction or Occurrence

In determining the meaning of the term "transaction or occurrence" under Rule 20, "many courts have drawn guidance from the use of the same term in Rule 13(a), applying to

compulsory counterclaims." *Abraham v. Am. Home Mortgage Servicing, Inc.*, No. 12-cv-4686 (WFK)(JMA), 2013 WL 2285205, at *3 (E.D.N.Y. May 23, 2013) (collecting cases); *see also Peterson v. Regina*, No. 10 Civ. 1692 (JSR), 2013 WL 1294594, at *6 (S.D.N.Y. Mar. 28, 2013). In the Rule 13(a) context, the Second Circuit applies the "'logical relationship' test." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004). That is, courts are to look to the logical relationship between the claims and determine "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979).

Evaluated in light of the above factors, the claims of the multiple plaintiffs in this case are not properly joined together. To the contrary, judicial economy and fairness dictate that the claims be tried separately. This is patently clear both as to those plaintiffs and defendants whom plaintiffs have agreed voluntarily to dismiss, and to the 16 plaintiffs and three defendants who, upon such dismissal, would remain in the case. Each of those 16 plaintiffs entered into a different loan transaction at a different time, and with one exception, each of the 16 plaintiffs' claims relate to a distinct property.[3] These plaintiffs have failed altogether to allege that their 15 loans arise out of the "same transaction, occurrence, or series of transactions or occurrences" as required by Rule 20(a)(1). There are no facts alleged that suggest that this is so.

A separate barrier to joinder is presented by the presence of multiple defendant lenders. "It is well established that separate loan transactions by *different lenders* do not constitute a single transaction or occurrence and claims by plaintiffs who engaged in those separate

---

[3] The apparent exception involves plaintiffs Vernon and Lynn Ryan, who, it appears, together received the mortgage on their property in Lithonia, Georgia. Accordingly, although there are 16 plaintiffs, there are only 15 separate loan transactions that remain in the case.

7

transactions generally cannot be joined in a single action." *Abraham*, 2013 WL 2285205, at *4 (emphasis added) (collecting cases). To some degree, plaintiffs have reduced the scale of this particular defect by having agreed to the dismissal of all but three defendants. Plaintiffs argue that the claims against one or more of these three defendants by the 16 remaining plaintiffs may be joined together, because these plaintiffs have "direct and related claims against the remaining defendants, arising from a series of transactions that constitute a pattern of wrongdoing." Pl. Br. 2. Plaintiffs explain that they "each claim they were injured by BOA's engaging in predatory lending with the acquiescence, assistance and participation of Seterus, the defendant loan servicer." *Id.* But the mere fact of a common lender does not alone make joinder appropriate—more is needed: "[E]ven claims by plaintiffs who engaged in separate loan transactions by the *same lender* cannot be joined in a single action." *Abraham*, 2013 WL 2285205, at *4 (emphasis in original) (collecting cases).

For this reason, plaintiffs' reliance on two products liability cases to support their claim that this joint action may proceed is misplaced. *See* Pl. Br. 5–7 (citing *Abraham v. Volkswagen of Am., Inc.* (*Volkswagen*), 795 F.2d 238 (2d Cir. 1986), and *Kehr ex rel. Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821 (S.D.N.Y. 2008)). In *Volkswagen*, the Second Circuit found permissive joinder appropriate because all 119 plaintiffs alleged injuries from "the faulty valve stem seal as a single defect that caused various damages, [and thereby] satisfied the same transaction or occurrence (or series thereof) requirement." 795 F.2d at 251. Similarly, in *Kehr*, both plaintiffs claimed "damages stemming from alleged design defects common to all Yamaha Rhinos on the market in the relevant time period." 596 F. Supp. 2d at 827. Importantly, those cases involved numerous plaintiffs seeking to sue a single defendant over a common design

8

defect. And although the plaintiffs' injuries varied, each plaintiff alleged that he or she had been injured by the same single design defect.

In contrast, here, there is no common defect or misconduct. Rather, as alleged, each plaintiff was injured as a result of a separate mortgage transaction affecting his or her property. Plaintiffs allege only an amorphous pattern of activity—a "single predatory lending scheme," *see* Pl. Br. 3—on the part of the three defendants. But the Amended Complaint does not allege that the three defendants operated in concert as part of this single scheme. And the pattern as alleged is so vague and sweeps so broadly that it does not give defendants close to the requisite notice of what a plaintiff's allegations of wrongdoing are as to any particular loan. *See* Am. Compl. ¶ 18(a)–(z) (listing wide-ranging types of alleged wrongdoing). The Amended Complaint does not even allege the date (or even the year) on which any of these loans were issued, modified, serviced, or securitized. There is no factual basis supplied to link any particular loan to any particular type of wrongdoing by any particular defendant, let alone to substantiate plaintiffs' conclusory claim of a pattern of joint misconduct. As Bank of America aptly notes, "[t]he alleged 'pattern' is so speculative and undefined that it would cover any borrower whose residential loan originated with, or was serviced by, Bank of America or Seterus." BoA Reply Br. 2. The Amended Complaint thus fails to allege a common transaction or occurrence sufficient to justify joinder of multiple plaintiffs' claims.

Although this alone would justify severance on grounds of misjoinder, the Amended Complaint is also fatally indistinct as to the roles played by the particular defendants or the dealings between particular defendants and particular plaintiffs. The Amended Complaint leaves quite unclear the role that any defendant is alleged to have played. In their brief, plaintiffs state for the first time that Bank of America originated the loans and Seterus served as a loan servicer.

9

*See* Pl. Br. 4, 14 ("All allegations directed at lenders should now clearly be understood to be directed at BOA. All allegations directed at loan servicers should be understood to be directed at defendant servicer, Seterus, Inc."). Even assuming the Amended Complaint could be fairly read to allege that Bank of America was the lender as to each plaintiff, it does not differentiate between the two Bank of America defendant entities—in its list of plaintiffs' properties, it merely lists "Bank of America" next to 15 of the properties. It thus remains unclear what role Bank of America Corporation played as opposed to Bank of America, N.A. As to Seterus, plaintiffs seem to allege wrongdoing as to just a single property associated with Seterus: that owned by Jason Keetch in Lehi, Utah. Given its involvement in only one of the 15 transactions that remain in the case, Seterus assuredly has not been adequately alleged to have been part of a common series of transactions.

On this basis, the Court, emphatically, holds that plaintiffs have failed to plead facts sufficient to support a finding that plaintiffs' claims against these three defendants are "so logically connected" to dictate that they be resolved together. "The plaintiff bears the burden of demonstrating that joinder is warranted under Rule 20," *Deskovic*, 673 F. Supp. 2d at 159, and the plaintiffs here have not met it. Without allegations relating to such fundamental facts as the dates of transactions, the participants in them, the roles played by the defendant participants in them, or the factual basis for the alleged wrongdoing in the particular connection—let alone facts indicative of a plausible connection between these separate events—joinder is not justified. The Court, accordingly, grants defendants' motion to sever, from the claims of the first-named plaintiff Lori Kalie, all claims by other plaintiffs, and to dismiss those plaintiffs' claims without prejudice.

### 3. Other Considerations

With the Court's having found no common transaction or occurrence, severance and dismissal of the misjoined claims is mandatory. The Court notes, however, that it would reach the same outcome in exercising its discretion, because joinder does not serve judicial economy. *See Erausquin*, 806 F. Supp. 2d at 720. Inasmuch as each plaintiff's claims appear to arise out of a mortgage-related transaction that is distinct from the transactions on which the other plaintiffs' claims are based, and as each plaintiff's claims implicate distinct loans, locations, dates and personnel, there is no meaningful economy of scale gained by trying these cases together. This case appears to involve little, if any, overlapping discovery across the plaintiffs' claims. *See Deskovic*, 673 F. Supp. 2d at 171. And were plaintiffs' claims to proceed to trial, distinct witnesses and documentary proof would be required to establish (or rebut) their separate claims. The interest in economy is affirmatively disserved by forcing these many parties to attend a common trial at which these separate, unrelated claims, only a fraction of which implicates the rights of any one party, would be resolved.

Moreover, given that each plaintiff's case arises out of a different loan transaction and that the Amended Complaint fails to substantiate the claim of common or patterned misconduct, a joint trial would stand to unfairly prejudice defendants. A joint trial "could lead to confusion of the jury" and thereby prejudice defendants. *See id.*; *Tardd v. Brookhaven Nat. Lab.*, No. 04 CV 3262 (ADS), 2007 WL 1423642, at *11 (E.D.N.Y. May 8, 2007). This is especially true for Seterus, against whom only one plaintiff has a claim, because there is a risk that trying plaintiffs' claims against Bank of America and Seterus in a single trial could lead to spillover prejudice.

For this independent reason, severance of the claims of all plaintiffs other than Lori Kalie is required. The claims of these other plaintiffs are dismissed without prejudice to the right of these other plaintiffs to bring a properly pled lawsuit.

### B.     Kalie's Claims

The Court, then, is left with Kalie's claims. Bank of America, against whom these remaining claims lie, has moved to transfer them to the Eastern District of Pennsylvania, *see* BoA Br. 2, 7–8, and, in the alternative, to dismiss her claims in their entirety under Rule 12(b)(6). For the reasons stated below, the Court concludes that Kalie's claims fail to state a claim and dismisses them without prejudice. There is, to be sure, a very substantial argument that the Eastern District of Pennsylvania, where Kalie's property (and thus the locus of operative fact) is located, would be a more appropriate venue for this case. However, because Kalie's claims are substantively deficient, the Court declines to transfer the case at this point, and to saddle a sister district with a complaint that is manifestly deficient on its face. In the event that Kalie files an amended complaint in this Court that comports with Rule 12(b)(6), the Court will then consider whether transfer to another district is merited.

Kalie's claims must be dismissed in their entirety, because, as noted, the Amended Complaint is riddled with legal conclusions and contains insufficient factual support to make out plausible claims. As to Kalie in particular, the Amended Complaint does not provide sufficient factual detail about her claims to meet the plausibility requirement. It does not allege a factual connection between Kalie's mortgage and any of the three remaining defendants. Exhibit 1 lists "Bank of America" beside Kalie's property's address, but it does not specify which Bank of America entity was involved in her loan, let alone in what capacity. Nor does the Amended Complaint or its Exhibit 1 specify what wrongdoing the defendants engaged in vis-à-vis Kalie,

*e.g.*, whether her loan was issued based on an inflated property value or on incorrectly stated income; whether she was wrongfully denied a loan modification or was issued one without the necessary underwriting; or whether a defendant failed to respond to her inquiries or made misrepresentations as to foreclosure.  *See generally* Am. Compl. ¶ 18(a)–(z).  Without any such allegations as to Kalie's loan specifically, the Amended Complaint does not plead a sufficient factual basis to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.  Accordingly, Kalie's claims are not facially plausible.

Moreover, as to each of the 11 causes of action brought with respect to Kalie, the Amended Complaint simply gives a "formulaic recitation of the elements," which, without more, falls short of federal pleading requirements.  *See Twombly*, 550 U.S. at 555.  Each claim lists, in the alternative, numerous ways in which a defendant might have violated the statute in question, but the Amended Complaint does not state, as to Kalie, how any of these three defendants allegedly did so.  For example, Kalie's TILA claim extensively canvasses TILA and its associated Regulation Z, but alleges only that "[d]efendants failed to provide the disclosures mandated . . . in one or more of the following ways," and then lists all four of the possible ways to violate Regulation Z.  *See* Am. Compl. ¶ 26.  Some of these alleged potential violations are inconsistent with one another; none references Kalie's loan.  The other statutory causes of action contain similar deficiencies.

Kalie's state-law claims are also insufficient:  Her breach of contract claim, for example, does not set out a single detail of the loan contract, or state which provisions of such contract defendants have, allegedly, breached.  *See* Am. Compl. ¶¶ 61–64.  Her fraud claim does not come close to meeting the heightened pleading requirements of Rule 9(b):  It does not state with

particularity a single fact as to defendants' alleged defrauding of Kalie. *See* Am. Compl. ¶¶ 45–50. In short, as to all of Kalie's claims, the Amended Complaint offers only "labels and conclusions," and is not legally sufficient to state a claim.

Given the breadth and ambiguities of the Amended Complaint, Kalie has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and so her claims must be dismissed. However, the Court is mindful that, as formulated, the Amended Complaint attempts to encompass the claims of 52 plaintiffs. It is not tailored to the particular claims of any plaintiff. Accordingly, it is appropriate to give Kalie an additional opportunity to amend the Amended Complaint to reflect the facts of her *individual* claims. The dismissal is therefore without prejudice to Kalie's ability to file a legally sufficient Second Amended Complaint within 30 days.

## CONCLUSION

For the reasons stated above, the Court grants defendants' motions to sever. All plaintiffs' claims, except for Lori Kalie's, are severed, and dismissed without prejudice on that ground. Seterus is also dismissed as a defendant, because no claims remain against it.[4]

The Court also grants defendants' motion to dismiss Kalie's claims, without prejudice to her right to file a Second Amended Complaint within 30 days from the date of this Opinion & Order. The Court emphasizes that Kalie is authorized to file a new amended complaint as to her claims only, and not as to any other dismissed plaintiff. Because the Court has dismissed Kalie's claims as substantively deficient, it denies as moot Bank of America's motion to transfer venue.

---

[4] Although Seterus, in its motion, sought "the costs and disbursements of this motion," *see* Seterus Br. 1, the issue was not briefed and Seterus has not identified a basis on which the Court should award such costs. Accordingly, the Court, in its discretion, denies Seterus's request for costs.

The Clerk of Court is directed to terminate the motions pending at docket numbers 14 and 17. If no Second Amended Complaint has been filed by September 9, 2013, the Clerk of Court is requested to close the case.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: August 9, 2013
       New York, New York